UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


MANUELA ONTIVEROS-LERMA,

    Plaintiff,

-vs-                                                      NO. CIV 99-1008 LH/WWD

ROGER TERRAZAS, JEFFREY GARBOW,
JOE ALVAREZ, in their individual capacities,
and the COUNTY OF DOÑA ANA,

    Defendants.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Garbow, Alvarez, and Board of County Commissioners of Doña Anna County's Motion to Dismiss Count IV of Plaintiff's Amended Complaint (Docket No. 19), filed January 7, 2000.  The Court, having considered the Motion, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds that the Motion is well taken in part and will be **granted in part**.

Plaintiff claims that while she was held as a federal pre-trial detainee at the Doña Ana County Detention Center ("DACDC"), Defendant Terrazas, a medical assistant employed by the DACDC, sexually assaulted and battered her when she went to the infirmary for treatment.  In Count IV of her Amended Complaint, Plaintiff charges all Defendants with "discrimination on the basis of sex in the provision of services or facilities in connection with housing," in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604.  (Am. Compl. ¶¶ 34-35.)  Defendants Garbow, Alvarez, and the Board of County Commissioners of Doña Anna County (for purposes of this Motion collectively,

"Defendants") move to dismiss Count IV for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6).  They also ask for the imposition of sanctions of attorney's fees and costs associated with their Motion on grounds that Plaintiff's FHA claim is a frivolous.

On a preliminary matter, Movants contend that the Board of County Commissioners of Doña Ana County ("Board"), rather than the County of Doña Ana, is the party against which an action against the Doña Ana County should be brought, citing N.M. STAT. ANN. § 4-46-1.  (*See* Mem. Br. Supp. Defs.' Mot. Dismiss Count IV at 1 n.1.)   Plaintiff does not contest this position and offers to amend her Complaint to substitute the Board for the County.  (*See* Pl.'s Resp. Opp'n at 1 n.1.)  The Court will grant Plaintiff permission to so correct her Amended Complaint by interlineation.

In enacting the FHA, Congress declared the policy "to provide, within constitutional limitations, for fair housing throughout the United States."  42 U.S.C. § 3601.  In furtherance of this goal, the FHA outlaws "[d]iscrimination in the sale or rental of housing" and certain other practices. 42 U.S.C. § 3604 (section title).  As applicable to this suit specifically, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b).

Courts apply the Act broadly within its terms.  *See Southend Neighborhood Improvement Ass'n v. County of St. Clair*, 743 F.2d 1207, 1209 (7th Cir. 1984).  Plaintiff, however, attempts to stretch the reach of the FHA beyond even an expansive reading of the statute.  The DACDC is not a "dwelling" under the FHA, and the alleged discrimination in the provision of services or facilities involved herein clearly was not in connection with the sale or rental of a dwelling.

Pursuant to 42 U.S.C. § 3602(b),

2

> "Dwelling" means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof.

Although the word "residence" is central to this definition of "dwelling," it is not defined by the Act. *United States v. Columbus Country Club*, 915 F.2d 877, 881 (3d Cir. 1990). Courts therefore have adopted its ordinary dictionary meaning: "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." *Id.*, 915 F.2d at 881 (3d Cir. 1990)(quoting *United States v. Hughes Mem'l Home*, 396 F. Supp. 549 (W.D. Va. 1975)). The central inquiry, then, in determining whether a temporary residence is a dwelling for purposes of the FHA, is whether the occupant intends to remain for any significant period of time and whether the occupant views it as "a place to return to." *Id.*; *see also Louisiana Acorn Fair Hous. v. Quarter House*, 952 F. Supp. 352, 358 (E.D. La. 1997)( in determining whether dwelling is "residence" under Act, courts generally consider length of time person stayed and whether intended to return). Applying this standard, courts have found summer homes, a cooperative apartment building, an office building converted for use as a hospice for AIDS victims, a homeless shelter, farm labor camps, a nursing home, and timeshare units to be dwellings within the scope of the FHA, while a motel, vacant land held for commercial use, and a grocery store have been held not to be such dwellings. *See Columbus Country Club*, 915 F.2d at 881; *Woods v. Foster*, 884 F. Supp. 1169, 1173-74 (N.D. Ill. 1995); *Laurer Farms, Inc. v. Waushara Co.*, 986 F. Supp. 544, 559 (E.D. Wis. 1997); *Louisiana Acorn Fair Hous.*, 952 F. Supp. at 359-60.

Plaintiff contends that her stay in the DACDC was for a significant enough period of time, almost six months, to qualify it as a dwelling and that she not only intended to return there, but

3

actually left regularly to attend judicial proceedings, for example, and returned to the facility. Unlike the plaintiffs in the circumstances held to be dwellings *supra*, however, Plaintiff here, as a pre-trial detainee, had no control whatsoever over where she resided or for how long. As "a place to return to," an FHA "dwelling" clearly involves not only "intent," but also the ability to act upon one's intention in choosing a "dwelling." *Cf. Louisiana Acorn Fair Hous.*, 952 F. Supp. at 359 (timeshare unit "owners possess the right to return to their unit. What these owners decide to do with this right, as is true with any property owner, is their own decision."). Plaintiff's intentions regarding her place of habitation, whatever they may have been, were in fact completely irrelevant, not only as to where she resided, or more accurately, where she was held by authorities, but also as to whether and when she left and returned. Thus, the Court will not hold that the DACDC is the equivalent of a "dwelling" subject to the strictures of the FHA.

Furthermore, even if the Court were to find that DACDC were a dwelling covered by the FHA, Plaintiff's allegation of discrimination "in the provisions of services or facilities *in connection with housing*," (Am. Compl. ¶ 35 (emphasis added)), incompletely tracts and is not encompassed by the FHA. Pursuant to subsection 3604(b), discrimination because of sex is not prohibited "in connection with housing," but is "limited to services and facilities provided in connection with the s*ale or rental* of housing." *Clifton Terrace Ass'n, Ltd. v. United Techs. Corp.*, 929 F.2d 714, 720 (D.C. Cir. 1991)(emphasis added)(citing 42 U.S.C. § 3604(b).); *see also, Southend Neighborhood Improvement Ass'n*, 743 F.2d at 1210 ("[T]he pertinent clause[] in [42 U.S.C. § 3604](b) . . . [is] limited to services and facilities provided in connection with the *sale or rental* of housing.") (emphasis added)).

4

Clearly, no sale took place with regard to Plaintiff's pre-trial detention at the DACDC. "To rent" is defined in the Act to include "to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant." 42 U.S.C. § 3602(e). Plaintiff did not rent the premises she occupied. Nor can she be considered the intended beneficiary of any rental agreement. *Cf. Woods*, 884 F. Supp. at 1171 (city contracted with non-profit corporation for housing and assistance in obtaining other services for otherwise homeless families). Whatever arrangement may have existed with the DACDC, federal officials were not contracting for housing, but for detention facilities, and Plaintiff was held at the DACDC against her will.

The Court also is not persuaded by Plaintiff's argument that in contesting the application of the FHA to her circumstances, Defendants, and presumably the Court, take the position that DACDC officials could place white detainees in large, clean cells and black detainees in small, dirty ones without violating the Act. (Pl.'s Resp. Opp'n at 9 n.4; Pl.'s Surreply at 3 n.2.) As the court discussed in *Clifton Terrace Assocs., Ltd.*, not every discriminatory act, even if it somehow affects housing, necessarily implicates the FHA:

> Of course, if a municipal government withholds or extends essential city services in a racially discriminatory manner, it violates the equal protection clause of the Fourteenth Amendment. *See, e.g., United Farmworkers of Fla. Hous. Proj., Inc. v. City of Delray Beach*, 493 F.2d 799, 808 (5th Cir. 1974). The fact that such a discriminatory practice could have an impact on the use and enjoyment of residential property rights, however, does not necessarily mean that it will also be redressable under Title VIII. *See Vercher v. Harrisburg Housing Auth.*, 454 F. Supp. 423, 424 (M.D. Pa.1978)("To say that every discriminatory municipal policy is prohibited by the Fair Housing Act would be to expand that Act to a civil rights statute of general applicability rather than one dealing with the specific problems of fair housing opportunities.").

929 F.2d at 720.

Finally, although the Court grants Defendants' Motion in part, dismissing Count IV of Plaintiff's Amended Complaint, it does not find that sanctions against Plaintiff or her attorneys are warranted in this matter.

**IT IS HEREBY ORDERED** that Plaintiff amend by interlineation the Amended Complaint for Civil Rights Violations, Tort Claims, and Damages to name the Board of County Commissioners of Doña County as a Defendant in the place of the County of Doña Ana.

**IT IS FURTHER ORDERED** that Defendants Garbow, Alvarez, and Board of County Commissioners of Doña Anna County's Motion to Dismiss Count IV of Plaintiff's Amended Complaint (Docket No. 19), filed January 7, 2000, is **GRANTED IN PART.**

_____
UNITED STATES DISTRICT JUDGE